IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MELISSA GRAHAM                                                                                          PLAINTIFF

v.                                         No. 4:04CV00185 JLH

BRYCE CORPORATION                                                                                 DEFENDANT

**OPINION AND ORDER**

Bryce Corporation has moved for summary judgment on Melissa Graham's claims of race discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and outrage under Arkansas law (Docket #39).[1]  For the following reasons, the Court GRANTS summary judgment.

**I.**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in her favor, keeping in mind that "summary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim." *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)). *See also Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). If the evidence would allow a reasonable

---

[1] Graham originally brought eight causes of action against Bryce, her former employer. Six of those claims were dismissed by Orders of this Court on December 15, 2004 (Docket #22), and April 11, 2005 (Docket #34).

jury to return a verdict for the nonmoving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996).

## II.

Melissa Graham, an African-American, was interviewed and hired to work at Bryce by Robert Skinner, Bryce's Human Resources Manager. Graham worked at Bryce from November 12, 2001, until Skinner fired her on March 20, 2003. Skinner states that he fired her for falsifying paid funeral leave and for dishonesty in violation of Bryce's policies. Graham alleges that Skinner set her up to violate the funeral leave policy and then, using the purported violation as a pretext, terminated her because of her race.

Bryce allows employees to take up to three days of paid funeral leave for the death of immediate family. The definition of "immediate family" in Bryce's employee handbook includes an employee's own grandparents but does not include the grandparents of an employee's husband or wife.

The grandmother of Graham's husband died on November 20, 2002. That day, Graham and James Graham, her brother-in-law who also worked for Bryce, met with Skinner to discuss funeral leave. The testimony differs on whether Graham informed Skinner that it was her husband's grandmother, not her own grandmother, who had died. James Graham testified that she did inform Skinner of that fact. Graham and Skinner state that she did not. Graham testified that Skinner already knew that she and James Graham were in-laws rather than brother and sister. Skinner stated that he never considered the fact that the deceased was not Graham's grandmother and assumed, based on the nature of the request and on the fact that Graham did not say otherwise, that she was. Skinner approved three days of paid funeral leave for both Graham and James Graham.

In March 2003, another employee requested funeral leave for the death of her husband's grandfather. After Skinner denied the request, the employee complained that Graham had received leave to attend the funeral of her husband's grandmother. On March 18, 2003, Skinner asked Graham whose funeral she had attended in November. Graham eventually told Skinner that it was her husband's grandmother.[2] On March 20, 2003, Skinner notified Graham that she was being discharged for falsifying paid funeral leave and for dishonesty in connection with this action.

### III.

Under Title VII, an employer cannot discharge or otherwise "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, a Title VII claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination by showing that 1) she was a member of a protected group, 2) she was meeting the legitimate expectations of his employer, 3) she suffered an adverse employment action, and 4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004). If the employer offers such a reason, the plaintiff must then present

---

[2] According to Skinner's investigatory document dated March 18, 2003:
On March 18, 2003, [Skinner] asked Melissa [whose] funeral she attended in November 2002. Melissa stated it was her grandmother's funeral. [Skinner] then asked Melissa was it her grandmother on her father[']s side or her mother[']s side of the family. Melissa again stated it was her grandmother. [Skinner] then asked if it was her true grandmother. Melissa then stated it was her husband's grandmother.

evidence sufficient to create a fact issue as to whether the employer's articulated reason is pretextual and to create a reasonable inference that race was a motivating factor. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

Assuming that Graham has produced sufficient evidence to satisfy her *prima facie* burden, the evidence does not create a reasonable inference that Bryce intentionally discriminated against Graham on the basis of her race. A plaintiff may create an inference of unlawful race discrimination and thus defeat summary judgment in various ways: by producing direct evidence of the employer's discriminatory intent in the form of actions or remarks; by producing evidence that the position remained open after the discharge and was ultimately filled by a person of a different race; by relying on comparisons of treatment of similarly situated employees of a different race, or by some other means that gives rise to an inference that race, and not some other discriminatory or non-discriminatory criteria, motivated the discharge. *See Rodgers*, 417 F.3d at 859 n.9 (Colloton, J., concurring) (citations omitted). In this case, Graham has produced no such evidence.

In her deposition, Graham compared herself to two white employees who either requested leave or received leave for a spouse's grandparent. Evidence that the plaintiff was treated less favorably than similarly situated employees of a different race can serve to prove disparate treatment. *See id*. at 853. At the pretext stage, comparison evidence gives rise to an inference of discrimination only if the plaintiff and the comparator "were similarly situated in all relevant respects." *Id*. at 852 (quoting *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 858 (8th Cir. 2004). The test is a rigorous one. *Id*.

Graham first compares herself to Stacie Johnson. Graham stated in her deposition that Johnson requested and received one day of paid funeral leave for the death of her husband's grandparent and is still employed by Bryce. The leave records show that Johnson took one day of

4

vacation time, not one day of paid funeral leave. Hence, Johnson did not engage in the same conduct as Graham. No claim is made that it was contrary to Bryce's policy for an employee to take vacation time to attend a funeral.

In her deposition, Graham also compared herself to Barbara Ferren. Approximately two weeks after Graham was terminated, a former co-worker told Graham that Ferren had received paid funeral leave for the death of her husband's grandfather and had not been terminated. Graham reported this to the Equal Employment Opportunity Commission ("EEOC") in support of her claim. The EEOC subsequently sent Bryce a Request for Information regarding Ferren. Skinner received this request around October 24, 2003. On October 30, 2003, Skinner confronted Ferren, and Ferren admitted that she had received paid funeral leave for the death of her husband's grandfather, not her own grandfather. Bryce terminated Ferren for falsifying funeral leave on November 3, 2003. Skinner testified that he had no prior knowledge that Ferren had received funeral leave for a relative not covered by the policy, and his testimony on that point is undisputed. Graham admits that she does not know when Bryce discovered Ferren's violation.

Ferren, like Graham, was discharged for violating Bryce's funeral leave policy. Graham believes that she, unlike Ferren, was "set up" by Skinner to violate the policy. Graham argues in her brief that her situation and Ferren's "is not a proper comparison in that Robert Skinner told Graham to take three days leave; he did not tell Ferren to take leave. Ferren set up her situation. Skinner set up the situation with Graham and then fired her." If so, the two are not similarly situated in all relevant respects.

Graham's bald assertion that Skinner set her up in an effort to terminate her is insufficient to create an inference that Skinner's action was motivated by race. *Cf. Jeseritz v. Potter*, 282 F.3d 542, 546-47 (8th Cir. 2002) (stating that plaintiff's own conclusory allegation that his employer was

5

"out to get him" because of his protected status did not defeat summary judgment); *Dyer v. TW Servs., Inc.*, 973 F. Supp. 981, 986 (W.D. Wash. 1997) (holding no reasonable inference of unlawful discrimination where plaintiff offered no specific instances where similarly situated employees were treated differently or any evidence that suggested a causal connection between the events and his race). Even if a jury believed Graham's assertion that Skinner set her up, concluding that he did so because of Graham's race would require speculation. Graham offers no evidence as to why Skinner would do such an irrational and mean-spirited thing. The possible motivations are endless. No evidence gives rise to a reasonable inference that Skinner did what he did because of Graham's race.

Indeed, as Bryce argues, the undisputed evidence presented in this case supports the inference that Skinner was *not* motivated by Graham's race. Graham testified that Skinner was "a good guy" who had never been unfair, harsh, unprofessional, or discriminatory towards her during her employment. No other person has complained that Skinner discharged Graham or mistreated any employee because of her race. Perhaps most importantly, Skinner hired Graham only one year and four months before the date of the alleged discriminatory firing. At the time of hire, Skinner knew that Graham was African-American. Being hired and fired by the same actor under these circumstances creates a strong inference against discrimination. *See Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991); *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461 (6th Cir. 1995). *See also Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992) (citing *Proud* and holding that it was "simply incredible, in light of the weakness of plaintiff's evidence otherwise," that the company officials who hired a member of a protected class had suddenly developed an aversion to that class less than two years later). No reasonable jury could conclude from the evidence in this record that race motivated Bryce's decision to terminate Graham. Accordingly, Bryce is entitled to summary judgment on this claim.

## IV.

To sustain a claim of intentional infliction of emotional distress or outrage, a plaintiff must prove four elements:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Crockett v. Essex*, 341 Ark. 558, 563, 19 S.W.3d 585, 589 (2000). The standard that a plaintiff must meet to satisfy the elements of outrage in Arkansas "is an exceptionally high one." *Kelley v. Georgia-Pacific Corp.*, 300 F.3d 910, 912 (8th Cir. 2002). In the employment context the standard is even higher. *Id*. (citing *Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001)); *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 958, 69 S.W.3d 393, 404 (2002); *Freeman v. Bechtel Const. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996). The evidence would not permit a reasonable jury to find in Graham's favor on this claim.

## CONCLUSION

Summary judgment is hereby entered in favor of Bryce Corporation.

IT IS SO ORDERED this   7th   day of September, 2005.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE